UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-cv-52-RLV
(5:08-cr-27-RLV-DCK-1)

| | |
|---|---|
| RUBEN RUIZ-CHAVEZ, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 7), on Petitioner's Motion for the Court to Set the Time to Reply, (Doc. No. 8), and on Petitioner's Reply, (Doc. No. 9).

I.     BACKGROUND

Petitioner Ruben Ruiz-Chavez participated in a drug smuggling operation involving the importing of cocaine from Mexico to Hickory, North Carolina, for distribution. (Criminal Case No. 5:08cr27, Doc. No. 90 at 4: Draft Presentence Investigation Report). The various shipments identified by investigators included multiple kilograms of powder cocaine. (Id. at 4-7). Petitioner's primary role in the drug smuggling operation was to serve as a lookout and bodyguard during the deliveries. (Id. at 6-7). As part of the investigation, officers stopped two vehicles driving in tandem, one of which was occupied by Petitioner. (Id.). A search of the two

1

vehicles revealed over $400,000 in cash. (Id.). According to one of Petitioner's coconspirators, Petitioner had just participated in the delivery of ten kilograms of cocaine prior to the stop. (Id.). Petitioner's co-conspirator also explained that Petitioner had participated in at least two earlier cocaine deliveries. (Id.).

On June 25, 2008, the Grand Jury for the Western District of North Carolina charged Petitioner, along with six of his coconspirators, in a six-count Bill of Indictment. (5:08-cr-27, Doc. No. 33 at 1; 3: Bill of Indictment). Petitioner was charged in two of the six counts with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute five or more kilograms of cocaine, in violation of § 841(a)(1) and (b)(1)(A). (Id., Doc. No. 33 at 1; 3). Before trial, Petitioner agreed to plead guilty to the drug conspiracy charge, pursuant to the terms of a written plea agreement. (Id., Doc. No. 69: Amended Plea Agreement).

The parties agreed to jointly recommend that the amount of cocaine reasonably foreseeable to Petitioner was between five and fifteen kilograms and that the appropriate base offense level was thirty-two. (Id. at 2). Provided that Petitioner made a full, accurate, and complete disclosure regarding the circumstances of the offense, the Government also agreed to recommend an additional one-level reduction in Petitioner's offense level for acceptance of responsibility. (Id. at 2-3). In exchange for the concessions made by the Government, Petitioner waived his rights to appeal or collaterally attack his conviction or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 5). Finally, the parties agreed that there were no other agreements, representations, or understandings between the parties other than those set forth in the plea agreement. (Id. at 6).

On August 21, 2008, Petitioner appeared at his plea and Rule 11 hearing, the Honorable David C. Keesler presiding. (Id., Doc. No. 211: Tr. of Plea & Rule 11 H'rg.). After placing Petitioner under oath, Magistrate Judge Keesler verified that Petitioner understood the charge against him, had discussed the case and any potential defenses with counsel, and was in fact guilty of the drug conspiracy charge. (Id. at 3-16). Magistrate Judge Keesler also confirmed that the parties had entered into a plea agreement and, after having the Government summarize the key provisions of that agreement, confirmed that Petitioner understood and agreed to the terms. (Id. at 16-20). At the conclusion of the hearing, Magistrate Judge Keesler found that Petitioner's plea was knowingly and voluntarily made and accepted it. (Id. at 22).

In preparation for sentencing, the probation officer prepared a presentence investigation report, calculating Petitioner's guidelines range of imprisonment. (Id., Doc. No. 90: Draft Presentence Investigation Report). Consistent with the plea agreement, the probation officer calculated a base offense level of thirty-two based on a drug quantity of five to fifteen kilograms of cocaine. (Id. at 7). The probation officer decreased Petitioner's offense level two levels because he satisfied the safety-valve provisions in § 5C1.2 and another three levels for acceptance of responsibility, resulting in a total offense level of twenty-seven. (Id. at 7-8).

When coupled with Petitioner's criminal history category of I, the resulting advisory guidelines range of imprisonment was 70 to 87 months. (Id. at 11). The probation officer noted, however, that Petitioner's conviction under § 841(b)(1)(A) required a ten-year mandatory-minimum sentence. (Id.). Despite the higher statutory minimum sentence, the probation officer advised that the Court should sentence Petitioner in accordance with the lower guidelines range because Petitioner satisfied safety-valve criteria set forth in 18 U.S.C. § 3553(f)(1)-(5). (Id.

(citing U.S.S.G. § 5C1.2)). In response, the Government submitted objections to the draft presentence report, contending that Petitioner should not receive the benefit of the safety valve and that he should instead receive an upward enhancement for obstructing justice. (Id., Doc. No. 96: Govt.'s Objections to the Presentence Report and Memo in Aid of Sentencing).

According to the Government, Petitioner failed to satisfy all of the criteria for the safety valve because he did not "truthfully provide the Government all information and evidence [he] has concerning the offense." (Id. at 1-2 (citing 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2(a)(5)). The Government explained that Petitioner provided materially false information by exculpating one his coconspirators, thereby contradicting statements made by others. (Id. at 2). In light of the Government's objections, the probation officer revised the presentence report by removing the two-level reduction for complying with the safety valve provisions but declined to include an obstruction-of-justice enhancement. (Id., Doc. No. 97 at 7-8). Based on a total offense level of twenty-nine and a criminal history category of I, the resulting guidelines range was 87 to 108 months. (Id. at 7-9; 11). Because the probation officer concluded that Petitioner no longer qualified for the safety valve, however, the minimum term of imprisonment was 120 months, consistent with the statutory mandatory minimum. (Id.).

At the outset of Petitioner's sentencing hearing, Petitioner's counsel argued that Petitioner should be entitled to the safety valve relief recommended in the draft presentence report. (Id., Doc. No. 212 at 3: Tr. of Sentencing H'rg). In support of his argument, Petitioner's counsel sought to explain the inconsistency in Petitioner's statement to the Government regarding his co-conspirator's knowledge of the criminal activity. (Id. at 3-8). In response, the Government tendered a copy of Petitioner's statement to the Court and summarized the inconsistent

4

statements. (Id. at 10-13). The Government also argued that Petitioner should not receive the additional one-level reduction for acceptance of responsibility and that the two-level obstruction of justice enhancement should apply. (Id. at 14-15). After hearing argument from both sides, this Court ruled that the safety valve did not apply because Petitioner did not truthfully provide the Government all information and evidence he had regarding the offense. (Id. at 26). The Court specifically found that Petitioner did not provide accurate information regarding his fellow runner and body guard's knowledge of the criminal activity. (Id.). With respect to the obstruction-of-justice enhancement, the Court declined to apply the two-level enhancement. (Id.). In calculating the guidelines range, the Court began with a base offense level of thirty-two and subtracted two levels for acceptance of responsibility, resulting in an advisory guidelines range of ninety-seven to 121 months. Because Petitioner was not eligible for the safety valve, however, the advisory range was 120 to 121 months, in light of the ten-year statutory mandatory minimum under § 841(b)(1)(A). (Id.). The Court ultimately sentenced Petitioner to the mandatory-minimum sentence of 120 months. (Id. at 28).

Petitioner filed a notice of appeal on August 17, 2009. (Id., Doc. No. 171: Notice of Appeal). On appeal, Petitioner's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that there were no meritorious issues for appeal but questioning whether this Court erred in its conclusion that Petitioner did not meet the requirements for the safety-valve reduction. In an unpublished opinion issued March 1, 2011, the Fourth Circuit Court of Appeals affirmed this Court's finding that Petitioner did not qualify for the safety valve because he was not truthful in his statement to the Government. United States v. Ruiz-Chavez, 413 F App'x 669 (4th Cir. 2011) (per curiam). Based on its review of the record, the Fourth Circuit found no other

5

meritorious issues for appeal and therefore affirmed this Court's judgment. (Id.). On April 11, 2011, Petitioner filed the instant motion to vacate in the prison mail system, raising three claims of ineffective assistance of counsel. Petitioner filed a supplement to his motion on June 28, 2012, raising two, additional ineffective assistance of counsel claims. (Doc. No. 2). On February 7, 2013, the Government filed a Response to the motion to vacate, and on May 8, 2013, Petitioner filed a Reply. (Doc. Nos. 7; 9).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir.

2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

1. **Petitioner's Ineffective Assistance of Counsel Claim Regarding Counsel's Alleged Failure to Reach Agreement with the Government on the Applicability of the Safety Valve and Obstruction-of-Justice Enhancement**

The safety valve provision provides that a defendant otherwise subject to a mandatory-minimum sentence under 21 U.S.C. § 841 may be sentenced according to a lower guidelines range if certain criteria are met, including that the defendant provided truthful information to the Government concerning the offense.  U.S.S.G. § 5C1.2; see also 18 U.S.C. § 3553(f)(1)-(5).  Petitioner contends that his attorney provided ineffective assistance by failing to reach an agreement with the Government regarding application of the safety valve.  Petitioner was ineligible for safety valve relief, however, not based on counsel's failure to reach an agreement with the Government, but because he failed to satisfy the truthful-disclosure requirement.

Because Petitioner's own conduct and failure to perform on his obligation to provide truthful information disqualified him from safety valve protection, he has not shown that counsel's action or inaction in his dealings with the Government resulted in any prejudice.  Petitioner also

7

contends that his attorney was deficient for failing to reach an agreement regarding application of the obstruction-of-justice enhancement. Although the Government sought an enhancement for obstruction of justice based on Petitioner's dishonest description of the offense, this Court ultimately declined to apply the enhancement. Accordingly, the obstruction-of-justice enhancement did not apply and did not impact Petitioner's sentence whatsoever. In sum, even assuming that counsel rendered ineffective assistance by failing to reach an agreement with the Government regarding the applicability of the safety valve and obstruction-of-justice enhancement, Petitioner has nevertheless failed to demonstrate prejudice, and this claim therefore fails.

2. **Petitioner's Ineffective Assistance of Counsel Claim Regarding Counsel's Failure to Address the Safety Valve and Obstruction-of-Justice Issues In Advance of Sentencing**

In a related claim, Petitioner contends that counsel should have filed a "pre-sentencing submission" in favor of applying the safety valve and that he should have opposed the obstruction-of-justice enhancement. Petitioner also suggests that counsel should have called Petitioner to testify at the sentencing hearing rather than relying exclusively on argument. Petitioner fails altogether, however, to allege how a pre-trial submission or Petitioner's testimony would have led this Court to reach a different conclusion regarding the truthfulness of his statement to the Government. The record shows that Petitioner's counsel argued thoroughly that the safety valve should apply, the Court reviewed Petitioner's statement before finding that it was untruthful, and the Fourth Circuit affirmed this Court's finding based on its review of the record. Under these circumstances, counsel's strategic decision regarding how best to present

8

Petitioner's safety-valve objection did not constitute deficient performance or result in prejudice. Furthermore, as discussed above, any deficient performance related to the obstruction-of-justice enhancement did not prejudice Petitioner because this Court declined to apply the enhancement.

3. **Ineffective Assistance of Appellate Counsel Claim Based on Appellate Counsel's Decision to file an <u>Anders</u> Brief**

The test for ineffective assistance of appellate counsel is the same as it is for trial counsel. Specifically, "to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal citations and quotation marks omitted). Appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Petitioner contends that appellate counsel was ineffective for failing to raise the safety valve and obstruction-of-justice issues on appeal. Contrary to Petitioner's assertion, his attorney did, in fact, question whether the safety valve protection should have applied, albeit in an Anders brief, and the Fourth Circuit specifically addressed the issue in its opinion affirming this Court's judgment. Raising the safety valve issue in an Anders brief rather than in a conventional brief

9

did not impact the standard of review or otherwise prejudice Petitioner. As for the obstruction of justice issue, as set forth above, the Court did not apply the obstruction-of-justice enhancement, and therefore, there was no issue to appeal.

4. **Petitioner's Ineffective Assistance of Counsel Claim Based on Counsel's Failure to Advise Him Regarding the Implications of Deportation**

Next, Petitioner claims, without elaboration, that his attorney failed to advise him regarding the "implications of deportation" in violation of his due process rights, thus reducing his plea to "non-voluntary and unknowing." In support of his claim, Petitioner cites Padilla v. Kentucky, 130 S. Ct. 1473 (2010), in which the Supreme Court held that the Sixth Amendment requires defense counsel to inform a defendant whether a guilty plea carries a risk of deportation so that the defendant can make an informed decision regarding whether to plead guilty. Id. at 1486. Padilla did not recognize a new right that is retroactively applicable to cases on collateral review. See United States v. Mathur, 685 F.3d 396 (4th Cir. 2012). In any event, Petitioner has failed to allege that there is a reasonable probability that he would not have accepted the plea agreement and entered a plea of guilty but for counsel's failure to advise him regarding the potential deportation consequences. See Hill, 474 U.S. at 57. Instead, rather than seek to withdraw his guilty plea, Petitioner requests that this Court direct that he is "no longer deportable, based upon his plea and conviction." Because Petitioner has failed to satisfy the prejudice prong, this claim fails.

5. **Petitioner's Ineffective Assistance of Counsel Claim Based on Counsel's Failure to Argue the Impact of "Fast Track" or Any Other Early Disposition Program**

United States Sentencing Guidelines § 5K3.1 provides that, upon the Government's motion,

the court may depart downward up to four levels "pursuant to an early disposition program authorized by the Attorney General." Relying on this policy statement, Petitioner contends that this Court erred, and that his attorney provided deficient performance, by failing to consider the disparity between defendants who receive a reduction in their term of imprisonment under the "fast track" program and those like Petitioner, who do not. Even assuming that Petitioner's claim satisfied the performance prong of the Strickland test, he has not shown prejudice. Here, Petitioner was subject to a ten-year statutory mandatory minimum under 21 U.S.C § 841(b)(1)(A), meaning that this Court lacked the authority to sentence Petitioner below the 120-month term of imprisonment he ultimately received. Because Petitioner was sentenced pursuant to a mandatory minimum sentence, the failure to consider the "fast track" disparity did not impact Petitioner's sentence.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**. Petitioner's Motion for the Court to Set the Time to Reply, (Doc. No. 8), is **GRANTED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: June 3, 2013

Richard L. Voorhees
United States District Judge